**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

TONY ALLEN HARDESTY, JR.,

      **Plaintiff,**

      v.                                                                                   CASE NO. 19-3120-SAC

(FNU) FAY,

      **Defendant.**

## MEMORANDUM AND ORDER
## AND ORDER TO SHOW CAUSE

Plaintiff, appearing *pro se* and *in forma pauperis*, filed this civil rights complaint under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was housed at the Saline County Jail in Salina, Kansas ("SCJ").

**I. Nature of the Matter before the Court**

Plaintiff asserts that he covered the window in his cell with paper while he was using the restroom. Plaintiff alleges that Defendant Fay did not say anything or give Plaintiff a warning before coming with five or six more COs to Plaintiff's cell and pulling a pepper ball gun on Plaintiff with it "ready to discharge." (Doc. 1, at 2.) Plaintiff felt threatened because he didn't know what was going to happen, so Plaintiff told Fay that Plaintiff was "going to knock him on his ass if he shoots me for no reason with no warning." (Doc. 1, at 6.) Plaintiff alleges that Fay "almost discharged" the pepper gun, and Plaintiff was upset that it was "brought to his door." *Id*. at 3, 6. Corporal McManigal told Plaintiff that Fay told him that he asked Plaintiff to remove whatever was in Plaintiff's window. Plaintiff alleges that Deputy Fay gave a false statement, committed perjury and should be fired.

On August 30, 2019, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 4) ("MOSC"), granting Plaintiff until September 27, 2019, in which to show good

1

cause why his Complaint should not be dismissed due to the deficiencies set forth in the MOSC. Plaintiff filed a Response (Doc. 5), alleging that when the COs came to his cell door he got into a verbal altercation with them and he punched the cell window, cracking it. Plaintiff alleges that Deputy Fay then fired his tazer, hitting Plaintiff in the left side of his waist. Plaintiff alleges that his cell door was closed and he was tazed through the open tray slot. Plaintiff alleges that Defendant Fay used excessive force in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

On October 2, 2019, the Court entered a Memorandum and Order (Doc. 7), dismissing Plaintiff's claims against Defendant Saline County Jail and Defendant McManigal. Regarding Plaintiff's Eighth Amendment claim against Defendant Fay, the Court found that the proper processing of Plaintiff's claim could not be achieved without additional information from appropriate officials of the SCJ. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the appropriate officials of the SCJ to prepare and file a *Martinez* Report, noting that once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915. At the direction of the Court, counsel for the SCJ filed a *Martinez* Report (Doc. 9).

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*,

113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

Plaintiff alleges that Defendant Fay violated his Eighth Amendment right to be free from cruel and unusual punishments. Because Plaintiff is a pretrial detainee, his claims are governed by the Due Process Clause rather than the Eighth Amendment. *Wright*, 651 F. App'x at 748 (citing *Lopez v. LeMaster*, 172 F.3d 756 n.2 (10th Cir. 1999)). Even so, the Court applies an analysis identical to that applied in Eighth Amendment cases brought under § 1983. *Id*.

The Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Prison officials violate inmates' Eighth Amendment rights when they subject them to the "unnecessary and wanton infliction of pain." *Id*. at 319. "[W]henever prison officials stand

4

accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9–10.

Plaintiff must prove both an objective component and subjective component to succeed on an excessive force claim. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). To establish the objective component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson*, 503 U.S. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

To establish the subjective component, Plaintiff must show that Defendant "act[ed] with a sufficiently culpable state of mind." *Cochran*, 339 F.3d at 1212 (citation omitted). Plaintiff's Complaint does not allege specific facts indicating that the Defendant engaged in the "wanton and unnecessary" infliction of pain that constitutes a violation of the Eighth Amendment. *See Reed*, 1999 WL 345492, at *4; *see also Wilson v. Wilcox*, No. 14-cv-0421-MSK, 2018 WL 1304532, at *6 (D. Colo. March 13, 2018) ("Because the disciplinary determination is inconsistent with some of Mr. Wilson's allegations . . . the factual findings in the disciplinary determination control, both

under *Heck* and consistent with the doctrine of collateral estoppel.") (citing *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999); *Havens v. Johnson*, 783 F.3d 776, 782–83 (10th Cir. 2015)).

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).

The Court has examined the commendably thorough *Martinez* Report and, for the reasons that follow, is considering the dismissal of this action. Plaintiff will be given an opportunity to respond to the *Martinez* Report and is directed to show cause why dismissal should not be entered.

The *Martinez* Report and attachments reflect that prior to the incident in issue, Plaintiff threatened SCJ staff and their families, was verbally and physically confrontational with staff, and was placed on suicide watch at his request. Plaintiff threatened to rape or kill other inmates' family members and children upon his release, and threatened to rape another inmate. Plaintiff told a Deputy at SCJ that he hated him and was going to kill him, threatening to cut out his heart, brain, kidneys, and liver, and to use those organs to make soup, and then consume them.

On June 11, 2019, Plaintiff violently struck his head against the cell door after he was told that he was not being removed from suicide watch. Staff attempted to secure Plaintiff in the restraint chair, but he resisted. SCJ staff tazed Plaintiff on the left side of his stomach to secure his cooperation. On June 28, Plaintiff became threatening and combative towards SCJ staff when he was not allowed to leave his cell to submit a grievance and sick call. Plaintiff stated that the

SCJ did not have enough people and that he wanted to beat up the rent-a-cops that lacked jurisdiction outside of the jail.

On July 1, 2019, at approximately 1 am, Deputy Fay was doing a walkthrough in Cell 2300, which is in disciplinary segregation, and observed that Plaintiff's cell window was covered with paper. This violated SCJ Housing Restrictions, posed a potential risk to officer safety, and prevented staff from performing inmate safety checks and verifying an inmate's safety. Fay told Plaintiff multiple times to remove the paper, but Plaintiff did not respond to or comply with Fay's directive.

Fay spoke with Cpl. McManigal, who suggested returning to Plaintiff's cell with a few other deputies to revisit the situation. Fay and McManigal discussed whether a show of force would be appropriate in light of Plaintiff's past violent and destructive acts, uncooperative and disruptive behavior, and threats towards SCJ staff. Fay took the SCJ's Pepperball gun, which is essentially a paintball gun that fires pellets that contain or consist of an Oleoresin Capsicum (OC) component. When discharged, a ruptured Pepperball capsule disperses a substance that has a similar effect as pepper spray or mace. Fay brought the Pepperball gun to maintain institutional order and ensure officer safety in the event SCJ staff had to enter Plaintiff's cell to remove the paper from the window. Deputies Buchanan, Shiever, and Snider accompanied Fay to Plaintiff's cell. While Buchanan spoke with Plaintiff, Fay stood to the side so that his side profile was likely visible through the cell window or a slit between the cell door and wall. Fay did not speak with Plaintiff during this encounter and had the Pepperball gun slung over his shoulder and torso, in a passive position, with the muzzle pointed to the ground. Plaintiff stated he felt threatened by the Pepperball gun and began making abusive, derogatory, and threatening statements towards Deputy Fay. Fay did not discharge the Pepperball gun at Plaintiff or into his cell, point the gun at Plaintiff,

or transfer the gun to an active or ready position. Deputies Fay, Buchanan, Shiever, or Snider were not armed with a taser during this encounter, and no taser was ever un-holstered, displayed, pointed at, or used against Plaintiff.

On July 3, Plaintiff had a disciplinary hearing for violations stemming from the July 1 encounter with Deputies Fay, Buchanan, Shiever, and Snider. Plaintiff admitted to threatening Fay and stated he did so because he was threatened by the Pepperball gun. Plaintiff was found guilty of Major Rule Violation 1.26—Threat to another person—and was issued an additional 10 days in lockdown (Disciplinary Segregation). Plaintiff did not grieve, or appeal, the guilty finding or the guilty finding or discipline imposed as a result of his July 1, 2019 conduct.

The *Martinez* Report reflects that Plaintiff failed to exhaust his administrative remedies; his claim is barred by *Heck v. Humphry*, 512 U.S. 477 (1994); and Plaintiff has failed to state a claim of excessive force. Plaintiff is given an opportunity to respond to the *Martinez* Report.

For the reasons set forth, the Court directs Plaintiff to show cause why his claim alleging excessive force should not be dismissed for failure to state a claim for relief.

**IT IS THEREFORE ORDERED BY THE COURT** Plaintiff is granted until **January 17, 2020,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein and in the Court's Memorandum and Order at Doc. 4.

**IT IS SO ORDERED**.

**Dated December 18, 2019, in Topeka, Kansas.**

<u>s/ Sam A. Crow</u>
**Sam A. Crow**
**U.S. Senior District Judge**